

## CAPITAL GROUP

### Schedule No. 002, dated March 6, 2015

Incorporating by reference Master Agreement No. 1425 dated September 2, 2014 (the "Master Agreement") between **Maxus Capital Group, LLC**, as Lessor, and **Supreme Manufacturing, Inc.**, as Lessee. This Schedule No. 002, as it incorporates the Master Agreement, is referred to herein as the "Lease."

*LESSEE AGREES TO LEASE THE DESCRIBED EQUIPMENT FROM LESSOR, AND LESSOR BY ACCEPTANCE OF THIS LEASE AGREES TO LEASE THE EQUIPMENT TO LESSEE, ON THE TERMS AND CONDITIONS SET FORTH IN THIS LEASE AND THE MASTER AGREEMENT, WHICH IS INCORPORATED HEREIN BY REFERENCE.*

Equipment Description: The inventory consisting of the component parts necessary to construct One (1) SMI-16 Yard Twin – MD (Mine Duty Gantry) Dredge (all of the foregoing, whether characterized as "equipment" or "inventory", as each such term is defined in Article 9 of the Uniform Commercial Code as adopted by the State of Ohio, is referred to herein, collectively, as the "Equipment"), as such parts are further detailed and referenced in purchase order No. 313596 dated October 2, 2014, as amended, (the "Purchase Order") between Lessee and Sully-Miller Contracting Company dba United Rock Products ("United Rock Products"), with all replacements, substitutions, replacement parts, additions, repairs, accessions, accessories, work in progress incorporated therein and/or affixed thereto, and all proceeds thereof. A true and correct copy of the Purchase Order is attached hereto as Exhibit "A".

1. Base monthly Rent: The amount calculated by multiplying the monthly rent factor of 0.6250% by the total amount of funds advanced by Lessor hereunder divided by 30 and then multiplied by the actual number of days outstanding.

2. Equipment Location: 327 Billy Boyd Rd., Stoneboro, PA 16153 and various locations approved by Lessor.

3. Expected Delivery Date: Lessor may establish the actual delivery date by reference to the shipping records of the supplier of the components, the shipper or by other reliable means.

4. Base Term: 120 months from the date of this Schedule, ~~but in any event, no later than December 23, 2015~~.

5. Lessee Address for Notices (if different from Master Agreement): N/A

6. Value of Calculation for Stipulated Loss Value: $8,166,700.00

7. Special Terms: i.) Security Deposit to be held by Lessor in any of its accounts without the payment of interest, and to be applied by Lessor as set forth in Section 19 of the Master Agreement: Not applicable.

    ii.) Section 17 (a) of the Master Agreement is hereby amended by adding the following clause thereto as an "Event of Default": "(9) Lessee is in default in the payment or performance of any obligation under any lease with Lessor, whether a lease originated by Lessor or one by which Lessor is lessor by virtue of an assignment."

    iii.) To further secure Lessee's obligations owing to Lessor, Lessee hereby grants Lessor a security interest in all of its assets (the "Additional Collateral"), whether now owned or hereafter acquired by Lessee, including, but not limited to, all of the following assets of Lessee (capitalized terms used below in this Section 7(iii) of this Lease have the meaning given to them by Article 9 of the Uniform Commercial Code as adopted by the State of Ohio unless defined otherwise herein): General Intangibles; Accounts and Deposit Accounts; Tangible and Electronic Chattel Paper; Goods; Fixtures; Instruments; Promissory Notes; Letter-of-Credit rights and advances of credit, except those subject to Regulation U; life insurance policies; Supporting Obligations; Equipment; Furniture; Inventory; Software; Documents; and Investment Property; all Proceeds in connection with the aforementioned property including, but not limited to, all rents, revenues, issues, profits, and any other form of value received from the sale, lease, license, encumbrance, collection or other disposition; and all ledger receipts, books, records, documents, computer records, programs, storage media, and software evidencing any and all of the foregoing. Notwithstanding the foregoing, the Additional Collateral shall not include any deposit accounts maintained by Lessee for employee payroll and payroll withholding taxes. Said Additional Collateral shall secure not only the amounts which Lessee is obligated to pay under this Lease, but also all other present and future indebtedness or obligations of Lessee to Lessor of every kind and nature whatsoever.

iv.) Lessee shall periodically submit draw requests to Lessor in the form attached hereto as Exhibit "B" (a "Request for Advance") for: (a) payment to Lessee's vendors for purchases of Equipment; (b) reimbursement of costs incurred by Lessee in the fabrication of the Equipment and the production of the SMI-16 Yard Twin – MD (Mine Duty Gantry) Dredge contemplated under the Purchase Order (the "Dredge"); and (c) amounts due Lessor under this Lease. Any draw request representing labor shall only be made once a calendar month and shall be paid to the extent of actual labor costs incurred by Lessee for that particular month. Lessee may submit draw requests to Lessor for payment, other than labor, no more often than twice a month, by the [5th and 20th] of each month or, if such a day is not a business day, then on the immediately following business day. Each draw request for payment to Lessee's vendors for purchases of Equipment shall be accompanied by a true and correct copy of (i) Lessee's purchase order to the vendor, (ii) the vendor's invoice, (iii) if the materials are to be delivered to Lessee's site, the bill of lading or other proof of delivery of the materials to Lessee's site in a form acceptable to Lessor, or (iv), if Lessee is the supplier of the component parts, an invoice to Lessor. As to overhead costs and the like, Lessee shall furnish Lessor with evidence of those costs in such form as is reasonably acceptable to Lessor and its Assignee. Each Request for Advance shall be in an amount not less than One Hundred Thousand and no/100 Dollars ($100,000.00), or such lesser amount as Lessor may accept in its sole discretion. Within five (5) business days of its receipt of a draw request complying with the terms of this Section 7(iv), provided no Event of Default or condition which, with the giving of notice or the passage of time or both, would constitute an Event of Default has occurred and is continuing, Lessor shall cause payment to be made in accordance with the Request for Advance. In no event shall the aggregate amount of the advances made by Lessor to Lessee pursuant to this Lease exceed Six Million and no/100ths Dollars ($6,000,000.00). Moreover, Lessee shall not submit, and Lessor shall not be obligated to honor, a Request for Advance if the dollar amount of such Request, when added to the aggregate amount of all previous Requests for Advances, exceeds the sum of the then aggregate accrued Milestone amounts as of the date of the Request for Advance, as such Milestone amounts are listed on Exhibit "B" to the Purchase Order. By way of example and not limitation, the aggregate Milestone amounts as of May 14, 2015 total $4,045,670.10; therefore, the aggregate amount of the Requests for Advances made by Lessee through May 14, 2015, shall not exceed $4,045,670.10. The first Request for Advance shall include, among other payments, the payment to Lessor of (i) $163,334.00 representing the issuance fee as set forth in the Commitment Letter dated February 18, 2015 from Lessor to Lessee and (ii) $30,000.00 to be held in an account at AmeriServ Financial Bank (Lessor's "Assignee") owned by Lessee, but pledged to Lessor subject to an agreement mutually acceptable to Lessor, Lessee, and Assignee, which monies will be used to pay reasonably anticipated legal expenses to be incurred by Lessor or its Assignee in the event United Rock Products fails to perform under its Purchase Order.

v.) Lessor will have the right to cease making advances hereunder and Lessee will immediately repay all amounts advanced by Lessor hereunder plus Base monthly Rent and other charges due if Lessor determines in its sole discretion that: (a) the progress of Lessee's construction of the Dredge is not in compliance with the Milestone dates as set forth in Exhibit "B" of the Purchase Order, and (b) Lessee will not is unable to ship the Dredge components to the Buyer's Location (as such term is defined in the Purchase Order) achieve Final Delivery (as such term is defined in the Purchase Order) by on or before December 23, 2015; (bc) a material adverse change has occurred in Lessee's financial condition or business; or (cd) an Event of Default has occurred and is continuing.

vi.) Provided no Event of Default or condition which, with the giving of notice or the passage of time or both, would constitute an Event of Default has occurred and is continuing, Lessee must, at the expiration of the Base Term, purchase all, but not less than all, of the Equipment for a purchase price equal to the greater of the following: (a) the then fair market value of the Equipment (as hereinafter defined) or (b) the aggregate of all amounts advanced by Lessor hereunder plus all accrued and unpaid Base monthly Rent and any other charges due hereunder. As used herein, the term "End of Lease Option" refers to Lessee's obligation to purchase the Equipment pursuant to this Section 7(vi). For purposes of this Section 7(vi), and in lieu of any other definition thereof, "fair market value" means the purchase price determined by Lessor in its reasonable discretion in accordance with its usual procedures. Upon receipt of such purchase price, together with any applicable taxes then or thereafter due, Lessor shall execute and deliver to Lessee a bill of sale for the Equipment, without representation or warranty except that the Equipment is free and clear of any liens, claims or encumbrances created by or through Lessor. Lessee covenants that until complete satisfaction of its obligations owing Lessor under this Lease, including, without limitation, its payment of the Early Purchase Option Amount or End of Lease Option, it will not enter into negotiations for future lease or financing transactions with Lessor's Assignee without the prior written consent of Lessor.

vii.) Provided that no Event of Default or condition which, with the giving of notice or the passage of time or both, would constitute an Event of Default has occurred and is continuing, Lessee may purchase all but not less than all of the Equipment covered by this Lease, effective as of the date of the delivery of the Dredge components to the Buyer's Location (as such term is defined in the Purchase Order), by paying Lessor the "Early Purchase Option Amount" defined below:

The Early Purchase Option Amount is equal to the sum of all advances made by Lessor to Lessee hereunder, plus any and all unpaid amounts then due and owing Lessor under this Lease, including but not limited to, unpaid rent, expenses, penalties or fees due or to become payable to Lessor upon lease expiration or termination.

viii.) Lessee hereby grants to Lessor non-exclusive rights of use and license, without cost, to all intellectual property and other proprietary technology related to the Dredge until complete satisfaction of its obligations owing Lessor under this Lease, including, without limitation, its payment of any of the Early Purchase Option Amount or End of Lease Option. Upon Lessee's complete satisfaction of its obligations owing Lessor under this Lease, including, without limitation, its payment of any of the Early Purchase Option Amount or End of Lease Option, Lessor's license to such intellectual property and other proprietary technology shall expire.

ix.) In addition to Lessor's rights under Section 9(a) of the Master Agreement, Lessee hereby grants Lessor oversight authority of the Dredge construction which will be done on a periodic basis and include site visits at both Lessee's and its sub-contractors' locations. Upon execution of this Lease, Lessee shall prepare and deliver to Lessor an Excel spreadsheet detailing anticipated Milestone dates and work to be completed by said dates (the "Milestone Report"). During the Base Term, Lessee shall deliver a monthly report to Lessor on the fifth day of each month updating the Milestone Report, including a percentage towards completion of the Dredge. Failure to deliver such monthly report to Lessor within five business days of its due date shall constitute an Event of Default hereunder. Lessee shall pay Lessor a reasonable monthly servicing fee for such oversight services, plus reimburse Lessor for any and all reasonable expenses incurred by Lessor in monitoring the construction and fabrication of the Dredge, including travel expenses related to Lessor's site visits. Lessee acknowledges and agrees that any inspections, oversight services, or monitoring performed by Lessor hereunder shall be for the sole and exclusive benefit of Lessor and its Assignee and shall not be relied upon by Lessee for any purpose whatsoever.

x.) As additional collateral to secure Lessee's obligations owing to Lessor and/or its Assignee, Lessee shall cause United Rock Products, or an affiliate thereof, to secure two (2) documentary letters of credit, each (a) in a form and substance satisfactory to Lessee and its Assignee, (b) naming Lessee as beneficiary and (c) to be issued by Crédit Agricole Corporate and Investment Bank, New York Branch. One documentary letter of credit shall be in the amount of Eight Hundred Sixteen Thousand Six Hundred Seventy and no/100 Dollars ($816,670.00) (the "10% LC") and the second documentary letter of credit shall be in the amount of Six Million One Hundred Twenty-Five Thousand Twenty-five and no/100 Dollars ($6,125,025.00) (the "75% LC"). Lessee shall strictly comply with and shall do all things necessary and appropriate to satisfy the terms and conditions the 10% LC and the 75% LC such that the full amount available under such documentary letters of credit shall be applied towards the Lessee's obligations under this Lease, including without limitation, Lessee's payment of the Early Purchase Option Amount or End of Lease Option.

xi.) Lessee hereby assigns and grants a security interest to Lessor in of all of Lessee's right, title, and interest in and to the 10% LC and the 75% LC, including but not limited to all Proceeds (as hereinafter defined) and rights to payment in connection with such documentary letters of credit. As used in this Lease, the term "Proceeds" has the same meaning ascribed to that term under Article 9 of the Uniform Commercial Code as adopted by the State of Ohio. Upon request of Lessor or its Assignee, Lessee shall provide written notification and/or confirmation to the issuing bank, nominated bank, confirming bank, and any other persons or entities as Lessor may deem necessary or appropriate of the assignment and security interest granted to Lessor hereunder in the documentary letters of credit contemplated herein and such written notice and/or confirmation shall be in form and substance satisfactory to Lessor and its Assignee.

xii) Lessee hereby assigns to Lessor all of its rights, but none of its obligations, in the Purchase Order, including its right to receive the 10% down payment and the 75% payment due from United Rock Products under the Purchase Order and all Proceeds in connection with the Purchase Order. Lessee shall promptly and timely provide Lessor with a copy of any notice it receives from United Rock Products during the Base Term, including, but not limited to, any notice of termination of the Purchase Order. Lessee shall also deliver to Lessor evidence of delivery of all of the Dredge components to the Buyer's Location in the form of copies of the related bills of lading.

xiii) Upon the occurrence of an Event of Default, Lessor may, in addition to all rights and remedies it has under Section 17(b) of the Master Agreement, take possession of and utilize any materials, plant, tools, equipment and property of any kind owned or leased by Lessee and may exercise all of the rights of Lessee under any subcontracts that Lessee has entered into with respect to any of the Equipment, in order to (a) complete the delivery of the Dredge components in accordance with the terms of the Purchase Order, or (b) to complete the components of the Dredge for sale to a third party. Notwithstanding any other provision of this Lease to the contrary, the remedies in this Section 7 (xiii) and elsewhere in this Lease provided in favor of Lessor are not exclusive but are

Schedule No. 002
Maxus Lease No. 1425-002
Page 4 of 5

viii.) Lessee hereby grants to Lessor non-exclusive rights of use and license, without cost, to all intellectual property and other proprietary technology related to the Dredge until complete satisfaction of its obligations owing Lessor under this Lease, including, without limitation, its payment of any of the Early Purchase Option Amount or End of Lease Option. Upon Lessee's complete satisfaction of its obligations owing Lessor under this Lease, including, without limitation, its payment of any of the Early Purchase Option Amount or End of Lease Option, Lessor's license to such intellectual property and other proprietary technology shall expire.

ix.) In addition to Lessor's rights under Section 9(a) of the Master Agreement, Lessee hereby grants Lessor oversight authority of the Dredge construction which will be done on a periodic basis and include site visits at both Lessee's and its sub-contractors' locations. Upon execution of this Lease, Lessee shall prepare and deliver to Lessor an Excel spreadsheet detailing anticipated Milestone dates and work to be completed by said dates (the "Milestone Report"). During the Base Term, Lessee shall deliver a monthly report to Lessor on the fifth day of each month updating the Milestone Report, including a percentage towards completion of the Dredge. Failure to deliver such monthly report to Lessor within five business days of its due date shall constitute an Event of Default hereunder. Lessee shall pay Lessor a monthly servicing fee for such oversight services, plus reimburse Lessor for any and all expenses incurred by Lessor in monitoring the construction and fabrication of the Dredge, including travel expenses related to Lessor's site visits. Lessee acknowledges and agrees that any inspections, oversight services, or monitoring performed by Lessor hereunder shall be for the sole and exclusive benefit of Lessor and its Assignee and shall not be relied upon by Lessee for any purpose whatsoever.

x.) As additional collateral to secure Lessee's obligations owing to Lessor and/or its Assignee, Lessee shall cause United Rock Products, or an affiliate thereof, to secure two (2) documentary letters of credit, each (a) in a form and substance satisfactory to Lessee and its Assignee, (b) naming Lessee as beneficiary and (c) to be issued by Crédit Agricole Corporate and Investment Bank, New York Branch. One documentary letter of credit shall be in the amount of Eight Hundred Sixteen Thousand Six Hundred Seventy and no/100 Dollars ($816,670.00) (the "10% LC") and the second documentary letter of credit shall be in the amount of Six Million One Hundred Twenty-Five Thousand Twenty-five and no/100 Dollars ($6,125,025.00) (the "75% LC"). Lessee shall strictly comply with and shall do all things necessary and appropriate to satisfy the terms and conditions the 10% LC and the 75% LC such that the full amount available under such documentary letters of credit shall be applied towards the Lessee's obligations under this Lease, including without limitation, Lessee's payment of the Early Purchase Option Amount or End of Lease Option.

xi.) Lessee hereby assigns and grants a security interest to Lessor in of all of Lessee's right, title, and interest in and to the 10% LC and the 75% LC, including but not limited to all Proceeds (as hereinafter defined) and rights to payment in connection with such documentary letters of credit. As used in this Lease, the term "Proceeds" has the same meaning ascribed to that term under Article 9 of the Uniform Commercial Code as adopted by the State of Ohio. Upon request of Lessor or its Assignee, Lessee shall provide written notification and/or confirmation to the issuing bank, nominated bank, confirming bank, and any other persons or entities as Lessor may deem necessary or appropriate of the assignment and security interest granted to Lessor hereunder in the documentary letters of credit contemplated herein and such written notice and/or confirmation shall be in form and substance satisfactory to Lessor and its Assignee.

xii) Lessee hereby assigns to Lessor all of its rights, but none of its obligations, in the Purchase Order, including its right to receive the 10% down payment and the 75% payment due from United Rock Products under the Purchase Order and all Proceeds in connection with the Purchase Order. Lessee shall promptly and timely provide Lessor with a copy of any notice it receives from United Rock Products during the Base Term, including, but not limited to, any notice of termination of the Purchase Order. Lessee shall also deliver to Lessor evidence of delivery of all of the Dredge components to the Buyer's Location in the form of copies of the related bills of lading.

xiii) Upon the occurrence of an Event of Default, Lessor may, in addition to all rights and remedies it has under Section 17(b) of the Master Agreement, take possession of and utilize any materials, plant, tools, equipment and property of any kind owned or leased by Lessee and may exercise all of the rights of Lessee under any subcontracts that Lessee has entered into with respect to any of the Equipment, in order to (a) complete the delivery of the Dredge components in accordance with the terms of the Purchase Order, or (b) to complete the components of the Dredge for sale to a third party. Notwithstanding any other provision of this Lease to the contrary, the remedies in this Section 7 (xiii) and elsewhere in this Lease provided in favor of Lessor are not exclusive but are cumulative and may be exercised concurrently or consecutively and will be in addition to all other remedies in Lessor's favor under this Lease, at law or in equity.

Schedule No. 002
Maxus Lease No. 1425-002
Page 5 of 5

8. Additional Covenants.

i) Prior to submitting any Request for Advance hereunder, Lessee shall obtain and deliver to Lessor the written consent of United Rock Products to the assignment by Lessee of the Purchase Order, any interest therein and any money due or to become due thereunder, to Lessor and its Assignee.

ii) Throughout the term of this Lease, Lessee shall (a) promptly and timely comply with all of its obligations under the Purchase Order, and (b) comply, and cause its subcontractors to comply with, the insurance requirements described in Section 13(c) of the "General Terms and Conditions" of the Purchase Order.

9. Financial Covenants.

i.) Beginning with fiscal year ended December 31, 2014, owner's withdrawals, compensation, distributions, intercompany transfers, shareholder notes will be prohibited as to Lessee unless a minimum CF/DS Ratio (as hereinafter defined) of 1.20 to 1.00 is achieved before consideration of said items. Once achieved, Lessee may make such distributions so long as a CF/DS Ratio of 1.10 to 1.00 is maintained. Any such distribution shall be subordinate to AmeriServ Financial Bank's debt service. The "CF/DS Ratio" is defined as follows: [net income (loss) + depreciation/amortization + interest expense + management fees (as expensed) + noncash expenses - owner's/partner's withdrawals - distributions - intercompany transfers - management fees (as expensed) – shareholder loans] ÷ actual debt service, on an annual basis.

ii.) Until complete satisfaction of its obligations owing Lessor under this Lease, including, without limitation, its payment of any of the Early Purchase Option Amount or End of Lease Option, Lessee shall not incur any additional debt without prior written consent of Lessor.

iii.) No material change in ownership with out written prior consent of Lessor.

iv.) Until complete satisfaction of its obligations owing Lessor under this Lease, including, without limitation, its payment of any of the Early Purchase Option Amount or End of Lease Option, Lessor shall have the unconditional right of first refusal on all financing opportunities with Lessee.

10. Financial Reporting Requirements

Lessee shall promptly provide or cause to be promptly provided the following financial information to Lessor and its Assignee:

i.) Within 30 days of Lessee's fiscal year end and commencing with the fiscal year ending December 31, 2014, Lessee's annual company prepared financial statements;

ii.) Within 30 days of filing, but in any event no later than October 31st of each year, Lessee's annual federal income tax returns (complete with all worksheets, notes and schedules), which shall be in form and content satisfactory to Lessor and Assignee;

iii.) No later than the first (1st) day of each fiscal year of Lessee, Lessee's annual projected financial statements; and

iv.) Within thirty (30) days of each quarter end, Lessee's internally prepared quarterly financial statements.

**[THE REMAINDER OF THIS PAGE HAS BEEN INTENTIONALLY LEFT BLANK]**
**[SIGNATURES ON FOLLOWING PAGE]**

Schedule No. 002
Maxus Lease No. 1425-002
Page 6 of 5

**THIS SCHEDULE NO. 002 (INCORPORATING THE MASTER AGREEMENT) CONSTITUTES THE ENTIRE AGREEMENT BETWEEN THE LESSOR AND LESSEE AS TO THE LEASE AND THE EQUIPMENT. EXCEPT AS THIS SCHEDULE NO. 002 CONFLICTS WITH OR IS INCONSISTENT WITH THE TERMS OF THE MASTER AGREEMENT AS INCORPORATED HEREIN, THE TERMS OF THE MASTER AGREEMENT ARE UNMODIFIED AND REMAIN IN FULL FORCE AND EFFECT. LESSEE ACKNOWLEDGES THAT ON OR BEFORE LESSEE'S SIGNING OF THIS LEASE IT RECEIVED A COPY OF THE CONTRACT EVIDENCING LESSOR'S ACQUISITION OF THE EQUIPMENT.**

Lessee:  **Supreme Manufacturing, Inc.**          Lessor:  **Maxus Capital Group, LLC**

By: _____             By: _____

Print Name: _____     Anthony N. Granata

Title: _____           Vice President

This is Counterpart No. ____ of 2 serially numbered counterparts. To the extent that this document constitutes chattel paper under the Uniform Commercial Code, no security interest in this document may be created through the transfer and possession of any counterpart other than Counterpart No. 1.